**FILED**

JUL 2 0 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
------------------------------------X
                                    :
In Re: AFRICAN AMERICAN             :
DESCENDANTS' SLAVE LITIGATION       : MDL No. 1491 (CRN)
                                    : 02 CV 7764 (CRN) LEAD CASE
------------------------------------X
This Pleading Relates to:           :
------------------------------------X
United States District Court        :
Eastern District of New York        :
                                    : 02 CV 7766 (CRN)
DEADRIA FARMER-PAELLMANN,           :
  On behalf of herself and as       :
  representative of her enslaved    :
  ancestors and all other persons   :
  similarly situated                :
                        Plaintiff,  :
                                    : MOTION FOR RECONSIDERATION
         vs.                        : OF DISMISSAL ORDER
                                    :
FLEETBOSTON FINANCIAL CORPORATION,  :
AETNA INC., CSX, and                :
their predecessors, successors      :
and/or assigns, and                 :
CORPORATE DOES NOS. 1-100,          :
                        Defendants. :
------------------------------------X
```

Plaintiff, Deadria Farmer-Paellmann, comes before the Court pro se. Pursuant to FRCP 59(e), plaintiff requests that the court reconsider its order, dated July 6, 2005, dismissing her case with prejudice.

**BACKGROUND**

*Motion for Reconsideration*
*Page 1*

Deadria Farmer-Paellmann is a plaintiff in a Second Amended Consolidated Complaint filed on April 4, 2004, against defendant Aetna for slavery restitution stemming from injuries her enslaved ancestor Abel suffered from as a result of Aetna writing a slave life insurance policy on his life. Injuries he suffered from as a result of this practice include loss of property interest in himself and the fruit of his labor.[1] Plaintiff also claims that she suffers from various continuous injuries as a result of Aetna's act against her ancestor Abel, including irreparable psychological damage from the loss of her African history, language and culture[2].

Plaintiff included pendant state claims alleging recent consumer fraud by defendants FleetBoston and CSX.[3] Plaintiff alleges that she lost money as a result of being misled by false communications defendants made to her and the public, starting in March of 2000, about their slavery business practices; and that they are unjustly enriched by money they gained from her,

---

[1] Second Consolidated and Amended Complaint (SCAC), enumerating various injuries suffered by plaintiffs' ancestors, and continuous injuries suffered by plaintiff today as a result of Aetna's role in enslaving Plaintiff's ancestor Abel. Continuous injuries include loss of property rights in the fruit of her ancestor's slave labor.at 33-35. Injuries suffered by Plaintiff's ancestor Abel due to Aetna's role in enslaving him include loss of property right in himself and his labor, SCAC at 59.

[2] Plaintiff's Memorandum in Opposition to Defendants' Joint Motion to Dismiss, citing continuous injuries suffered by plaintiff including irreparable psychological damage resulting from Aetna's enslavement of her ancestor Abel, including the loss of her African ethnic and national identity (i.e. culture), at 1-2.

[3] SCAC, stating that the court has supplemental jurisdiction over state consumer fraud claims. at 20.

*Motion for Reconsideration*
*Page 2*

beginning in March of 2000, as a result of making the alleged misleading statements - in particular, public statements disassociating themselves from the practice of slavery.

Defendants moved to dismiss the case claiming, amongst other things that plaintiff's claims cannot be heard in a court in 2005.[4]

The court granted the dismissal with prejudice, on July 6, 2005.

Plaintiff presents the court with this motion to reconsider the dismissal with prejudice.

**GROUNDS FOR RELIEF**

The court has found that reconsideration is appropriate under FRCP 59(e) when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension,"[5] or there has been a

---

[4] SCAC at 1.

[5] McConnell v. Iovino Boersma Enterprises, et al., 2005 Lexis 13124, 04-C-4628 (N.D. Ill. June 23, 2005); Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co., 139 F. Supp. 2d 943, 945 (N.D. Ill. 2001) (quoting Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F2d 1185, 1191 (7th Cir. 1990))

*Motion for Reconsideration*
*Page 3*

. controlling or significant change in the facts since the submission of the issue to the court.[6]

### FACTS RELEVANT TO THE MOTION

<u>Consumer Fraud Claims are Patently Mistaken by the Court to be Slavery Reparations Claims</u>

The first basis for this motion is that (1) the court has patently mistaken plantiff's consumer fraud allegations against defendants FleetBoston and CSX as claims to establish standing for reparations claims related to historical enslavement,[7] while the record shows that plaintiff's consumer fraud claims against these defendants were made for relief from alleged recent acts,[8] [9]of alleged consumer fraud.[10] [11]

---

[6] RICHARD MOUNT, et al. v. LASALLE BANK LAKE VIEW, *2004, 02-C-1941, U.S. Dist. LEXIS 24036*

[7] Opinion and Order, July 6, 2005, MDL. 1491, Lead case 02-CV-7764 at 49, stating: "Further, plaintiffs cannot use their standing to pursue one type of claim in State court to establish their standing to pursue all of the claims asserted in the present case in federal court." Here the court is erroneously concluding that plaintiffs are trying to use standing in State Unfair and Deceptive Trade Practice claims to satisfy standing in all other claims filed in the case..

[8] The SCAC, states that " Not only have defendants hidden their complicity in slavery for years, they continue to do so today. solely to promote their business interests in maintaining customer goodwill and in increasing their profits, defendants are engaging in continued intentional misrepresentations and deceptive statements to the consuming public about their roles in the enslavement of Africans."at 51.

[9] The SCAC cites, "CSX, based in Richmond Virginia says the allegations that its railroad lines were built with slave labor lack merit," referring to a September 2002 article in the Dallas Morning News. at 53.

Plaintiff's Direct Links to Defendants Are not Recognized In the Dismissal Order

The second basis for this motion is that (2) the court has made an error in apprehension when it states that no plaintiff in the action has a direct relationship to defendants in the action.[12] Information supporting plaintiff's direct links to all defendants in her action is in the court's record.[13]

In particular, the record shows that plaintiff Farmer-Paellmann claims that defendant Aetna wrote a life insurance policy on her ancestor Abel.[14]

---

[10] The SCAC, stating that the court has supplemental jurisdiction over various state claims of Consumer Fraud and Unfair and Deceptive Trade Practices. p.20.

[11] The SCAC stating, "Plaintiffs seek consolidation of the following class and subclasses: …All descendants of enslaved Africans who purchased product from defendant corporations who would not have done so had defendants accurately described their role in the transatlantic slave trade." at 21.

[12] Opinion and order, stating that: "Plaintiffs fail to allege any facts in their Complaint that directly link the specifically named Defendants to the alleged injuries suffered by Plaintiffs; nor does the Plaintiffs' complaint allege a direct connection between any of the named defendants and any of the Plaintiffs ancestors." at 44.

[13] Plaintiffs' Memorandum in Opposition to Defendants' Joint Motion to Dismiss. Footnote 2 sets forth that Aetna Inc.'s predecessor in interest wrote a life insurance policy on the life of Farmer-Paellmann's great-great-grandfather Abel who was enslaved in South Carolina, that plaintiff was a customer of defendant FleetBoston at the time when she was misled by the bank's statements to the consuming public disassociating itself from playing a role in slavery; and that she was a customer of CSX when it made misleading communications to the consuming public about their role in slavery. at 2-3.

[14] Id. at 2.

*Motion for Reconsideration*
*Page 5*

In addition, plaintiff claims that she was a customer of defendant FleetBoston and lost money due to misleading statements they made to her and the consuming public about their business.[15] The complaint sets forth defendants' misleading claims.[16]

Further, plaintiff Farmer-Paellmann claims that she is a customer of CSX as she uses Amtrak train service that runs on CSX owned rail lines.[17] She claims that she lost money due to misleading statements CSX made to consumers about their business.[18]

### Facts Supporting Plaintiff's Consumer Fraud Injury Claims Were Not Recognized By the Court

The third basis for this motion is (3) the court has made an error in apprehension when it states that plaintiffs "still fail to allege a specific, concrete harm or an ascertainable loss as a result of Defendants' alleged violations" of consumer fraud statutes.[19] The record shows that Plaintiff does allege

---

[15] Plaintiffs' Memorandum in Opposition to Defendants' Joint Motion to Dismiss, at 3.

[16] SCAC at 51-55.
[17] Plaintiffs' Memorandum in Opposition to Defendants' Joint Motion to Dismiss, at 3.

[18] Id at 3.

[19] SCAC at 80.

the specific loss of money as a result of Defendants FleetBoston and CSX alleged violations of consumer fraud statutes.[20] [21]

## Plaintiff Alleges that Her Due Process Right Has Been Violated

The fourth basis for this motion is that (3) there has been a controlling and significant change in facts surrounding plaintiff's legal representation since the submission of her issues to the court.

In particular, the court relieved all of plaintiff's retained counsel from representing her since the filing of the First Amended Complaint,[22] none of the remaining counselors recognize plaintiff as their client and do not advise her,[23] and

---

[20] Plaintiffs' Memorandum in Opposition to Defendants' Joint Motion to Dismiss, at 3. Plaintiff states that she was FleetBoston's student loan customer and she "lost money paid to them due to their said fraudulent statements in that she could have obtained similar loan servicing for less money (via loan consolidation, etc.) had she known the truth" about their role in slavery.

[21] With respect to CSX, plaintiff states that she "lost money due to defendant's misleading statements in that she could have obtained similar transportation service for less money (i.e. bus, air flight, or local commuter train service) had she known the truth" about their role in slavery.

[22] Order granting leave for the law firm of Nagel, Rice & Mazie to withdraw as counsel for plaintiff dated March 26, 2004; and order granting Roger S. Wareham's Motion to Withdraw, dated February 23, 2004.

[23] Plaintiff has sent requests to remaining counsel asking that they file the motion for reconsideration, and requesting clarification on whether they represent her. Two counselors have replied claiming that they do not represent her, and six counselors have failed to respond to her request and inquiry. Plaintiff has never had an attorney/client relationship with any of

*Motion for Reconsideration*
*Page 7*

the court denied plaintiff's request to proceed pro se and to withdraw her case.[24] Consequently, plaintiff has existed in the litigation since April of 2004, without any representation, pro se or otherwise.

Plaintiff holds that her Constitutionally protected Due Process rights have been violated. Courts have held that in order to state a claim based on a violation of the Due Process Clause, a plaintiff must allege three elements: (1) she was deprived of a life, liberty, or property interest; (2) state actors caused the deprivation and (3) the deprivation occurred without due process of law.[25]

Plaintiff alleges that because she is unrepresented in her case and the court has denied her request to proceed pro se, that she is being deprived of her property interest in her case without an opportunity to be heard. Plaintiff alleges that the deprivation is caused by the Court – a state actor.

---

the counselors in this action other than those permitted to withdraw, and she does not know how they became a part of multidistrict litigation, much less how or why they might be considered her counsel by the court, if the court considers them her counsel.

[24] Plaintiff's request to Proceed Pro Se and to Withdraw Without Prejudice, filed on April 21, 2004. Order denying Plaintiff's Motion to Proceed Pro se and Withdraw Without Prejudice, issued January 1, 2005.

[25] JAN ZALEGA v. TOWN OF CICERO, et al., 2004 U.S. Dist. LEXIS 13090, 03 C 3585, citing three elements required to be allege in a Due Process Clause claim.

*Motion for Reconsideration*
*Page 8*

Plaintiff believes that the dismissal of her action with prejudice is, in large part, the result of the due process violation as existing counselors, who do not recognize her as their plaintiff, did not respond to her requests for consultation as highlighted in a court order,[26] incomplete information was stated in her complaint, and then she was prohibited by the court to act on her own behalf to correct the problems or withdraw from the case.

Upon this discovery, Plaintiff forwarded missing facts to counsel to include in the Plaintiff's Response to Defendants' Joint Motion to Dismiss (Plaintiffs' Response), and forwarded an e-mail copy to the court, ex-parte.[27]

Subsequently, lead counsel did include Plaintiffs links to defendants and her injuries in the footnotes of the said Plaintiff's Response.[28]

---

[26] Order forwarding unsolicited e-mail communication regarding plaintiffs request for consultation prior to filing of Second Consolidated and Amended Complaint. E-mail dated April 1, 2004; Order dated April 5, 2004.

[27] Plaintiff suffered a reprimand from the court for this ex parte communication, however, she believed the communication was the only way to get counsel to include her links to defendants in the Plaintiff's Response to Defendants Joint Motion to Dismiss (Plaintiff's Response) - particularly in light of the fact that the Court's Deputy called Plaintiff and informed her that the Court was not going to rule on her Motion to Proceed Pro Se and Withdraw.

[28] Plaintiffs' Response, at 2-3.

However, the Court did not recognize the said missing facts in its Opinion and Order dismissing plaintiffs claim, even though the facts had become a part of the courts' record.[29]

RELIEF REQUESTED

Plaintiff asks that the court accept and rule on this pro se motion, and clarify whom the court recognizes as her counsel. In the alternative, plaintiff asks that the court issue an order to whomever the court recognizes as her counsel to file this motion on her behalf, or withdraw officially from representing plaintiff so that she can proceed pro se and file this motion herself.

Plaintiff also asks that the court vacate its order dismissing her Second Amended Complaint, or in the alternative allow her dismissal to be "without prejudice".

---

[29] Id.

*Motion for Reconsideration*
*Page 10*

Dated: July 19, 2005
Jersey City, New Jersey

*(signature)*

DEADRIA FARMER-PAELLMANN
Phone: 917-365-3007
Fax: 201-656-1981
P.O. Box 1228
New York, NY 10009

*Motion for Reconsideration*
*Page*